### IN THE UNITED STATES DISTRICT COURT FOR
### THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | **CIVIL ACTION NO. 2:06cv736-WKW** |
| | * | |
| **SEVENTY-FOUR THOUSAND SEVEN** | * | |
| **HUNDRED DOLLARS ($74,700)** | * | |
| **IN UNITED STATES CURRENCY,** | * | |

### MOTION TO SUPPRESS

Comes now the Claimant George E. Jones, Jr., by and through counsel, and shows as follows:

### Issues Presented

1. This Motion to Suppress relates to the arrest, search, and interrogation of Claimant George E. Jones, Jr. on March 31, 2006, as well as the search of the residence at 5304 West Shades Valley Drive, Montgomery, Alabama, without a search warrant and, subsequently, pursuant to two separate search warrants.

2. This Motion involves the following issues:

      a. Whether the searches of Defendant and his residence were violative of the Fourth Amendment to the United States Constitution.

      b. Whether the statements made by Defendant were the fruits of unlawful arrest and interrogation and the aforementioned searches of Defendant and his residence, and were otherwise violative of the Fifth Amendment of the United States Constitution.

      c. Whether the search of 5304 West Shades Valley Drive, Montgomery, Alabama, was the product of search warrants issued on less than probable cause and/or upon an affidavit containing false, unreliable, and/or stale information without which the search warrant would not have issued.

d.  Whether the search of 5304 West Shades Valley Drive, Montgomery, Alabama, was the product of a search without a search warrant or of a search warrant that was vague and overbroad because, even assuming probable cause for some search, it authorized search of places and/or persons for which there was no probable cause to search and is constitutionally imprecise.

e.  Whether search of 5304 West Shades Valley Drive, Montgomery, Alabama, was the product of a search warrant that failed to adequately describe the premises to be searched and/or the things to be seized, such search warrant being so lacking in particularity as to authorize a general search and seizure.

### Factual Background

3.  On March 31, 2006,  Montgomery police officers began surveillance on 5304 West Shades Valley Drive, Montgomery, Alabama, at the request of B.W. Bartlett of the Narcotics and Intelligence Bureau while Bartlett was purportedly trying to obtain a search warrant.   Shortly afterwards, a vehicle left that address and officers stopped it and searched it with neither a warrant nor probable cause.

4.  Subsequently, another vehicle arrived at on 5304 West Shades Valley Drive, Montgomery, Alabama, driven by Otis Jones, who entered the residence, coming out later with Claimant George Jones.

5.  Both Otis and George Jones got into the vehicle driven by Otis Jones.  At that time, without a search warrant, a police officer wearing a mask and brandishing a firearm began running toward George Jones.  Mr. Jones, who is blind in one eye, fled, in fear for his life, to the back of his home, jumped a fence and, while running through neighborhood, tripped and fell.  The masked police officer jumped on him and searched his pockets, find a quantity of cocaine.

6.  Other officers, without a search warrant, searched the vehicle of Otis Jones, finding a quantity of narcotics concealed there.  At the same time, other officers began a search of the residence at 5304 West Shades Valley Drive, Montgomery, Alabama,

finding the money made subject of this action as well as other items.

7.   Mr. Bartlett was, during the times described above, allegedly driving to the residence with a "document search warrant".   Upon being informed of the events, via police radio or telephone, called R.J. Steelman of the Montgomery Police Department to ask him to obtain a "drug search warrant", utilizing the information from the above-described searches.   Attached hereto as Exhibit "A" and incorporated by reference are the affidavits and search warrants.

8.   At the time of obtaining the "document search warrant", Bartlett failed to inform the issuing judge that Bartlett had, in a previous federal case, been found to have given false testimony in an affidavit for a search warrant, and that his credibility was subject to question.   Attached hereto as Exhibit "B" and incorporated by reference is the Recommendation of the Magistrate Judge from United States v. Keith Eldridge Williams, Case No. 2:05CR68-T.

9.   At the time of the searches and seizures, the police officers did not know what, if any, searches and seizures were authorized by search warrant.

10.   The Fourth Amendment Exclusionary Rule applies to civil forfeiture.   See U.S. v. Premises and Real Property with Bldgs., Appurtenances and Improvements at 500 Delaware Street, 113 F.3d 310, 312 n.3 (2nd Cir. 1997).

11.   Probable cause is generally required for a search and is defined as "a fair probability that contraband or evidence of crime will be found on the premises to be searched. Carroll v. United States, 267 U.S. 132, 155-56 (1925).   Evidence presented in support of an application for a search warrant must provide a " substantial basis" for determining the existence of probable cause.   When probable cause is based on hearsay, as opposed to direct police observation, the affidavit supporting the warrant must at least allow "for a balanced assessment of the relative weights of all the various indicia of reliability, and unreliability, attending the informant's tip. Illinois v. Gates, 462 U.S. 213, 234,   238-239 (1983).   The affidavit must contain sufficient facts and

circumstances to enable the issuing authority to make an independent evaluation of probable cause. United States v. Ventresca, 380 U.S. 102 (1965). "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the person or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement endures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Maryland v. Garrison, 480 U.S. 79, 84 (1987). A material misrepresentation or omission, when recklessly made or omitted, in an affidavit in support of a warrant compromises the warrant's legitimacy. When the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a truthful showing. Franks v. Delaware, 438 U.S. 154, 164-65 (1978).

WHEREFORE, premises considered, the Claimant moves the Court to suppress the fruits of these searches and seizures, all statements resulting therefrom, and all other evidence resulting therefrom.

s/ Bruce Maddox
Bruce Maddox (MAD013)
Law Offices of Bruce Maddox
6728 Taylor Court
Montgomery, AL 36117
Telephone: (334) 244-7333
Fax: (334) 260-9600
retrocam@aol.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of February, 2007, I electronically filed the foregoing with Clerk of Court using the CM/ECF system which will send notification of such filing to John T. Harmon.

s/Bruce Maddox
Of Counsel

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

UNITED STATES OF AMERICA     *
                              *

                              *

v.                                *     CIVIL ACTION NO. 2:06cv736-WKW

                              *

SEVENTY-FOUR THOUSAND SEVEN    *
HUNDRED DOLLARS ($74,700)         *
IN UNITED STATES CURRENCY,        *

## MOTION TO SUPPRESS

Comes now the Claimant George E. Jones, Jr., by and through counsel, and shows as follows:

### Issues Presented

1. This Motion to Suppress relates to the arrest, search, and interrogation of Claimant George E. Jones, Jr. on March 31, 2006, as well as the search of the residence at 5304 West Shades Valley Drive, Montgomery, Alabama, without a search warrant and, subsequently, pursuant to two separate search warrants.

2. This Motion involves the following issues:

       a. Whether the searches of Defendant and his residence were violative of the Fourth Amendment to the United States Constitution.

       b. Whether the statements made by Defendant were the fruits of unlawful arrest and interrogation and the aforementioned searches of Defendant and his residence, and were otherwise violative of the Fifth Amendment of the United States Constitution.

       c. Whether the search of 5304 West Shades Valley Drive, Montgomery, Alabama, was the product of search warrants issued on less than probable cause and/or upon an affidavit containing false, unreliable, and/or stale information without which the search warrant would not have issued.

d.  Whether the search of 5304 West Shades Valley Drive, Montgomery, Alabama, was the product of a search without a search warrant or of a search warrant that was vague and overbroad because, even assuming probable cause for some search, it authorized search of places and/or persons for which there was no probable cause to search and is constitutionally imprecise.

e.  Whether search of 5304 West Shades Valley Drive, Montgomery, Alabama, was the product of a search warrant that failed to adequately describe the premises to be searched and/or the things to be seized, such search warrant being so lacking in particularity as to authorize a general search and seizure.

### Factual Background

3.  On March 31, 2006,  Montgomery police officers began surveillance on 5304 West Shades Valley Drive, Montgomery, Alabama, at the request of B.W. Bartlett of the Narcotics and Intelligence Bureau while Bartlett was purportedly trying to obtain a search warrant.   Shortly afterwards, a vehicle left that address and officers stopped it and searched it with neither a warrant nor probable cause.

4.  Subsequently, another vehicle arrived at on 5304 West Shades Valley Drive, Montgomery, Alabama, driven by Otis Jones, who entered the residence, coming out later with Claimant George Jones.

5.  Both Otis and George Jones got into the vehicle driven by Otis Jones.  At that time, without a search warrant, a police officer wearing a mask and brandishing a firearm began running toward George Jones.  Mr. Jones, who is blind in one eye, fled, in fear for his life, to the back of his home, jumped a fence and, while running through neighborhood, tripped and fell.  The masked police officer jumped on him and searched his pockets, find a quantity of cocaine.

6.  Other officers, without a search warrant, searched the vehicle of Otis Jones, finding a quantity of narcotics concealed there.  At the same time, other officers began a search of the residence at 5304 West Shades Valley Drive, Montgomery, Alabama,

finding the money made subject of this action as well as other items.

7.  Mr. Bartlett was, during the times described above, allegedly driving to the residence with a "document search warrant". Upon being informed of the events, via police radio or telephone, called R.J. Steelman of the Montgomery Police Department to ask him to obtain a "drug search warrant", utilizing the information from the above-described searches. Attached hereto as Exhibit "A" and incorporated by reference are the affidavits and search warrants.

8.  At the time of obtaining the "document search warrant", Bartlett failed to inform the issuing judge that Bartlett had, in a previous federal case, been found to have given false testimony in an affidavit for a search warrant, and that his credibility was subject to question. Attached hereto as Exhibit "B" and incorporated by reference is the Recommendation of the Magistrate Judge from United States v. Keith Eldridge Williams, Case No. 2:05CR68-T.

9.  At the time of the searches and seizures, the police officers did not know what, if any, searches and seizures were authorized by search warrant.

10.  The Fourth Amendment Exclusionary Rule applies to civil forfeiture. See U.S. v. Premises and Real Property with Bldgs., Appurtenances and Improvements at 500 Delaware Street, 113 F.3d 310, 312 n.3 (2nd Cir. 1997).

11.  Probable cause is generally required for a search and is defined as "a fair probability that contraband or evidence of crime will be found on the premises to be searched. Carroll v. United States, 267 U.S. 132, 155-56 (1925). Evidence presented in support of an application for a search warrant must provide a " substantial basis" for determining the existence of probable cause. When probable cause is based on hearsay, as opposed to direct police observation, the affidavit supporting the warrant must at least allow "for a balanced assessment of the relative weights of all the various indicia of reliability, and unreliability, attending the informant's tip. Illinois v. Gates, 462 U.S. 213, 234,   238-239 (1983).   The affidavit must contain sufficient facts and

circumstances to enable the issuing authority to make an independent evaluation of probable cause. United States v. Ventresca, 380 U.S. 102 (1965). "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the person or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement endures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Maryland v. Garrison, 480 U.S. 79, 84 (1987). A material misrepresentation or omission, when recklessly made or omitted, in an affidavit in support of a warrant compromises the warrant's legitimacy. When the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a truthful showing. Franks v. Delaware, 438 U.S. 154, 164-65 (1978).

WHEREFORE, premises considered, the Claimant moves the Court to suppress the fruits of these searches and seizures, all statements resulting therefrom, and all other evidence resulting therefrom.

s/ Bruce Maddox
Bruce Maddox (MAD013)
Law Offices of Bruce Maddox
6728 Taylor Court
Montgomery, AL 36117
Telephone: (334) 244-7333
Fax: (334) 260-9600
retrocam@aol.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of February, 2007, I electronically filed the foregoing with Clerk of Court using the CM/ECF system which will send notification of such filing to John T. Harmon.

s/Bruce Maddox
Of Counsel



STATE OF ALABAMA     )      **AFFIDAVIT IN SUPPORT OF A**
COUNTY OF MONTGOMERY )      **DOCUMENT SEARCH WARRANT**
CITY OF MONTGOMERY     )


## A F F I D A V I T


**B.W. Bartlett #845, a Detective of the Narcotics & Intelligence Bureau of the Montgomery Police Department, Montgomery, Alabama, being duly sworn, deposes and says:**


**This affiant is an investigator of the Montgomery, Alabama Police Department and has been a police officer for said agency for over 7 years. Your affiant has conducted narcotics investigations for the Montgomery Police Department for over 3 years. During your affiant's tenure as a investigative law enforcement officer, he has conducted numerous criminal investigations leading to the arrest and conviction of numerous defendants in Federal, State and Municipal Courts of the United States. Your affiant's training and participation in the investigations of drug traffickers has given him knowledge to recognize the methods used to further their illegal activities.**

**Based upon the affiant's training, experience and participation in other controlled substance investigations, he knows the following:**

**a).  That the sale of cocaine and other controlled substances generates large quantities of United States Currency usually in small denominations;**

**b).  That the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and narcotics transactions;**

**c).  That the Currency Transaction Report (CTR) (IRS Form 4789), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction which exceeds $10,000.00 causes tremendous problems for narcotics traffickers when they attempt to negotiate their illegal profits at a financial institution, causing them to maintain large amounts of cash on hand;**

**d).  That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances;**

**e).  That large-scale narcotics traffickers must maintain, on hand, large amounts of United States Currency in order to maintain and finance their on-going narcotics business;**

f).    That it is common for narcotics traffickers to maintain books, records, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances.  That the aforementioned books, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them;

g).    That it is common for drug traffickers to secret contraband, proceeds of drug sales and records of drug transactions in secure locations within there residences, their business and/or other locations which they maintain dominion and control over, for ready access and to conceal these items from law enforcement officers;

h).    That in order to accomplish this concealment, drug traffickers frequently build "stash" places within their residence or businesses.

i).    That it is common for drug traffickers to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers.  These items are maintained by the drug traffickers within their residences, business or other locations over which they maintain dominion and control;

j).    That cocaine and other controlled substances traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates within the trafficking organization;

k).    That drug traffickers take or cause to be taken photographs of themselves, their associates, their property, and their product.  That these traffickers usually maintain these photographs in their possession.

l).    That drug traffickers commonly have in their possession; that is on their person, at their residences, and/or their businesses, firearms including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug trafficker's property.  Such property may include, but not limited to: narcotics, jewelry, drug paraphernalia, books, records and United States Currency;

m).    That controlled substance traffickers commonly have in their possession paraphernalia, secreted, concealed or stored on their premises;

n).    That drug traffickers often place assets, purchased by them in names other than their own, to avoid detection of these assets by law enforcement agencies;

o).    That even though these assets may be in other persons' names, the drug traffickers continue to use them in order to maintain and finance their ongoing criminal activities;

p).  That drug dealers are aware of the possibility of being robbed or Law Enforcement Agencies executing search warrants where they are selling controlled substances.  It is common for drug dealers to sell controlled substances at different locations other than their own residences or primary residences so if such incidences do occur, they will only lose minimal amount of proceeds or documents pertaining to their illegal activity.

Based on this affiant's training and experience he has probable cause to believe and does believe that currency, drug records, telephone tolls, and other items listed above and in Attachment I and II are being stored and/or concealed in 5304 W. Shades Valley, Montgomery, Alabama.

1) Probable cause being that in the March 2006, a confidential and reliable source working under the direct control and supervision of member of the Montgomery Police Department Narcotics Bureau provided information that George Edward Jones, 09-22-1977, was involved in trafficking multiple kilograms of cocaine in the Montgomery area.

2) Further probable cause being that in the month of March 2006, the same confidential and reliable source observed a large quantity of U.S. Currency in the residence at 5304 W. Shades Valley under the dominion and control of George Edward Jones.

3) Further probable cause being that according to Montgomery Police Department records as of February 19, 2005, Jones gave his address as 5304 W. Shades Valley Drive, Montgomery, Alabama.

4) Further probable cause being that on March 05, 2004, Sgt. V.D. Wright of the Montgomery Police Department was contacted by a confidential and reliable informant who stated that B/M George Edward Jones was selling crack cocaine from the residence at 5304 W. Shades Valley Drive, Montgomery, Alabama.

5) Further probable cause being that on July 10, 1996 George Edward Jones, 09-22-1977 was arrested for the Unlawful Possession of a Controlled Substance (Cocaine).

6) Further probable cause being that during the arrest, Jones gave his address as 5304 W. Shades Valley Drive, Montgomery, Alabama.

7) Further probable cause being that on February 02, 1996 an anonymous caller contacted the Montgomery Police Department Secret Witness line and stated that B/M George Jones was involved in selling drugs at the residence at 5304 W. Shades Valley Drive, Montgomery, Alabama.

8) **Further probable cause being that on November 03, 1995 an anonymous caller stated that George Jones III was involved in selling drugs from the residence at 5304 W. Shades Valley Drive.**

**Based upon the aforementioned facts and circumstances, your affiant submits that probable cause does exist to believe that the following items (see Attachment I and Attachment II) are secured inside of the residence at 5304 W. Shades Valley Drive, Montgomery, Alabama.**

**SWORN TO AND SUBSCRIBED BEFORE ME THIS** ___31st___ **DAY OF** ___March___ **, 2006.**

This warrant was issued at ___6:40___ (am)/pm on the ___31st___ day of ___March___ 2006

___DET. B.W. Bartlett #845___
**DET. B.W. Bartlett #845**
**SPECIAL OPERATIONS DIVISION**
**NARCOTICS AND INTELLIGENCE BUREAU**
**MONTGOMERY POLICE DEPARTMENT**
**MONTGOMERY, ALABAMA**

_____
**MUNICIPAL COURT JUDGE**
**MUNICIPAL COURT**
**CITY OF MONTGOMERY**
**MONTGOMERY, ALABAMA**

# ATTACHMENT  I

1. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

2. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel.

3. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, pass books, bank checks, safe deposit box keys, and other items evidence of the obtaining, secreting, transfer, concealment and/or the proceeds of illegal drug trafficking.

4. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal drug trafficking.

5. Photographs, in particular, photographs of co-conspirators, of assets and/or controlled substances.

6. Receipts for items evidencing the expenditure of the proceeds of drug distribution, including, but not limited to, clothing, furniture and electronic equipment.

7. Paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including, but not limited to, scales, baggies, spoons, walkie-talkies, CB's, night vision devices, police scanners, binoculars and parabolic microphones.

8. Indicia of occupancy, residency, and/or ownership of the premises, including, but not limited to, utility and telephone bills, keys and cancelled envelopes.

9. Firearms

10. Computers, disks, CD's, including, but not limited to, items used to store or transmit materials, recipes or proceeds used in the manufacture, distribution or possession of illegal drugs.

## ATTACHMENT II

A. Any and all diaries, address books, electronic organizers, hand-held computers, cellular phones and beepers, and any data or information in the memory of such devices, relating to efforts to make, print, or publish materials seeking or offering the distribute and/or manufacturing controlled substances by use of the computer, for the purpose of transportation of such advertisements in interstate and/or foreign commerce by any means;

B. Any and all record, documents, and materials which reflect efforts to make, print, or publish materials seeking or offering the distribution and/or manufacturing of controlled substances in interstate and/or foreign commerce by any means;

C. Any and all record, documents, invoices, and materials that concern any accounts pertaining to the Internet;

D. Drug paraphernalia;

E. Any images of individuals engaged in drug activity;

F. Any and all tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict controlled substance crimes, information pertaining to controlled substances or the distribution, possession or receipt of images of individuals engaged in controlled substance crimes or illegal activity to acquire the proceeds to gain the ingredients to manufacture and/or use controlled substances or information pertaining to controlled substances, and the data within the aforesaid objects relating to said materials; and

G. Any of the items described in sub-paragraphs (A) through (F), which are stored in the form of magnetic or electronic coding on computer media, or media capable of being read by a computer, with the aid of computer-related equipment, including floppy diskettes, fixed hard drives, or removable hard disk cartridges, software or memory in any form. The search procedure for electronic date contained in computer operating software or memory devices, whether performed on site or in a laboratory, or other controlled environment, may include the following techniques:

1. The seizure of any computer or computer related equipment or data, including floppy diskettes, fixed hard drives, or removable hard disk cartridges, software or memory in any form, containing material described in sub-paragraphs (A) through (F), and the removal thereof from the PREMISES for analysis by authorized personnel;

2. Surveying various file "directories" and the individual files they contain (analogous to looking at the outside of the file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

3. "Opening" or cursorily reading the first few pages of such files in order to determine their precise contents;

4. "Scanning" storage areas to discover and possibly recover recently deleted data;

5. Scanning storage areas for deliberately hidden files; or

6. Performing keyword searches through all electronic storage area to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation. Keywords include words relating to controlled substances, drug paraphernalia and topics relating to controlled substances activities.

# SEARCH WARRANT

STATE OF ALABAMA     )
                     )      DOCUMENT SEARCH WARRANT

COUNTY OF MONTGOMERY )

CITY OF MONTGOMERY     )

TO ANY SHERIFF, DEPUTY, AND/OR MUNICIPAL OFFICER OF ____ OF POLICE:

Proof of affidavits, which are attached hereto and incorporated by reference, having been made this day before me, by Detective B.W. Bartlett #845, of the Special Operations Division, Narcotics Bureau, with the Montgomery Police Department. You are hereby commanded to make immediate search of:

5304 W. Shades Valley Drive, Montgomery, Alabama.

for the following property: U.S. Currency, records, books, notes ledgers and/or items listed in Attachment I and Attachment II.

And if you find the same or any part thereof, to bring it forthwith before me, at my office at Municipal Court, Montgomery County, Alabama; or if the said warrant is issued for violation of a state law return the same to any State Court.

Dated this ___ 21st ___ day of __MARCH__, 2006.

THIS WARRANT ISSUED AT ___8:40___ am/pm on the 30th of March 2006

**MUNICIPAL COURT JUDGE**
**MUNICIPAL COURT**
**CITY OF MONTGOMERY**
**MONTGOMERY COUNTY**
**MONTGOMERY, ALABAMA**

SIG____

I certify ____ ____ the items received ____ ____ed location.

SIGNATURE ____           . S.T. WRIGHT #__          2/31/06  0930

THE CITY OF MONTGOMERY

~~MERY~~ COUNTY

S E A R C H   W A R R A N T

TIME ENTERED: _0900_

TIME EXITED : _0930_

THIS _31_ DAY OF _MARCH_ 2006.

SHERIFF OR CHIEF OF POLICE

DEPUTY OR MUNICIPAL OFFICER

FILED IN OFFICE THIS _____ DAY OF

_____, 2006.

CLERK



# NARCOTICS & INTELLIGENCE BUREAU
# EVIDENCE/PROPERTY INVENTORY



The following item(s) were seized/received by the Montgomery Police Department subsequent to a:   (circle one)
**SEARCH WARRANT, CONSENT SEARCH, or ADMINISTRATIVE INVENTORY** .   These items were inventoried
by (Cpl S.T. WRIGHT #97J _____, a member of the Narcotics and Intelligence Bureau.

ADDRESS OBTAINED: 5304 w. Shades Valley _____   DATE: 3/31/06

TIME OF ENTRY: 0900 Hrs   TIME OF EXIT: 0930 Hrs.   PAGE 1 of 2

| ITEM# | DESCRIPTION OF ITEM SEIZED OR RECEIVED | LOCATION ITEM FOUND | TIME | OFFICER |
|---|---|---|---|---|
| (1) | Assorted U.S. Currency | 3rd Bedroom Under Bed | 0905 | TW 962 |
|  | # 100 Bills 298 total 29,800 |  |  |  |
|  | # 50 Bills 86 total 4,300 |  |  |  |
|  | 20 Bills 1553 total 31,060 |  |  |  |
|  | # 10 Bills 660 total 6,600 |  |  |  |
|  | # 5 Bills 556 total 2,780 |  |  |  |
|  | # 1 Bills 160 total 160 |  |  |  |
|  | 74,700.00 |  |  |  |
| (2) | One Glock 9mm Serial # AGA293US | Under drivers seat of Ford F-150 Tag # 3B26074 | 0915 |  |
| (3) | Blue Cap containing Two clear plastic Bag of | In tool Box of Ford F-150 Tag # 3B26074 | 0930 |  |
|  | cocaine. |  | " |  |
| xxx | (Document) SEARCH WARRANT STOPPED xxxxx — | ———— | " | — |
| xxxx | (Drug Search) WARRT START ON PAGE | | 1141 | |
|  | TWO. |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

By signing below I certify that I have received a copy of the inventory of item(s) as identified above.

SIGNATURE OF RECEIVER: J. JONES (refused to sign) (owner)   DATE & TIME: 3/31/06 0930

I certify that the above inventory accurately reflects the items received or removed from the listed location.

SIGNATURE OF EVIDENCE OFFICER: Cpl S.T. WRIGHT #97J   DATE & TIME: 3/31/06 0930

STATE OF ALABAMA                    )            AFFIDAVIT IN SUPPORT OF A
                                    )
COUNTY OF MONTGOMERY                )            DRUG SEARCH WARRANT
                                    )
CITY OF MONTGOMERY                  )


BEFORE ME, THE HONORABLE ⟨signature⟩ , JUDGE OF THE

MUNICIPAL COURT OF THE CITY OF MONTGOMERY, MONTGOMERY, ALABAMA, THE

UNDERSIGNED, CORPORAL R. J. STEELMAN #072, PERSONALLY APPEARED AND

STATED THAT HE IS A DETECTIVE WITH AND FOR THE SPECIAL OPERATIONS

DIVISION, NARCOTICS BUREAU OF THE MONTGOMERY POLICE DEPARTMENT,

MONTGOMERY, ALABAMA AND HE HAS REASON TO BELIEVE THAT ILLEGAL

NARCOTICS ARE BEING STORED AT 5403 WEST SHADES VALLEY DRIVE,

MONTGOMERY, ALABAMA. THE RESIDENCE IS DESCRIBED AS BEING A SINGLE

STORY BROWN BRICK DWELLING WITH YELLOW TRIM. THIS IS IN VIOLATION OF

THE CODE OF ALABAMA, 1975, SECTION 13A-12-212. THE FACTS TENDING TO

ESTABLISH THE FOREGOING GROUNDS FOR ISSUANCE OF A SEARCH WARRANT ARE

AS FOLLOWS:


ON MARCH 31ST, 2006, THE MONTGOMERY POLICE DEPARTMENT'S NARCOTICS

BUREAU EXECUTED A DOCUMENT SEARCH WARRANT 5304 WEST SHADES VALLEY

DRIVE, MONTGOMERY, ALABAMA. DURING THE EXECUTION OF THE SEARCH

WARRANT ILLEGAL NARCOTICS WERE FOUND. THE DOCUMENT SEARCH WARRANT

WAS IMMEDIATELY CEASED AND THE BUSINESS WAS SECURED PENDING THE

COURT'S APPROVAL OF A DRUG SEARCH WARRANT.


THE FOREGOING IS BASED ON THE PERSONAL KNOWLEDGE OF THIS AFFIANT,

OTHER MEMBERS OF THE NARCOTICS BUREAU AND FACTS OBTAINED BY THE

MONTGOMERY POLICE DEPARMENT NARCOTICS AND INTELLIGENCE BUREAU,

MONTGOMERY, ALABAMA, AND IS MADE FOR THE PURPOSE OF SECURING A SEARCH

WARRANT FOR THE RESIDENCE WARRANT 5304 WEST SHADES VALLEY

DRIVE, MONTGOMERY, ALABAMA

THIS SEARCH WARRANT IS FOR ILLEGAL NARCOTICS TO INCLUDE:

DRUG PARAPHERNALIA, RECORDS OF DRUG TRANSACTIONS, DRUG BUY MONIES,

WEAPONS AND ANY ITEMS LISTED IN ATTACHMENT I:  ALSO TO INCLUDE ANY

PERSONS LOCATED AT THE BUSINESS AND ALL COMMON AREAS, OUTBUILDINGS,

AND VEHICLES LOCATED WITHIN THE CURTILAGE THERE OF.


SWORN TO AND SUBSCRIBED BEFORE ME THIS ___31 ST___ DAY OF __MARCH__ , 2006.



CPL. R. J. STEELMAN #072
SPECIAL OPERATIONS DIVISION
NARCOTICS AND INTELLIGENCE BUREAU
MONTGOMERY POLICE DEPARTMENT
MONTGOMERY, ALABAMA

MUNICIPAL JUDGE
MUNICIPAL COURT
CITY OF MONTGOMERY
MONTGOMERY, ALABAMA
SIGNED @ 11:25 Am HOURS

# SEARCH WARRANT

STATE OF ALABAMA )                    DRUG SEARCH WARRANT
                                    )
COUNTY OF MONTGOMERY )
                                    )
CITY OF MONTGOMERY )


TO ANY SHERIFF, DEPUTY, AND/OR MUNICIPAL OFFICER OR CHIEF OF POLICE:

Proof of affidavits, which are attached hereto and incorporated by reference, having been made this

day before me, by Corporal R. J. Steelman #072, of the Special Operations Division, Narcotics

Bureau, with the Montgomery Police Department. You are hereby commanded to make immediate

search of:

5304 WEST SHADES VALLEY, MONTGOMERY, ALABAMA, ANY PERSON, OUTBUILDINGS

AND VEHICLES LOCATED WITHIN THE CURTILAGE THERE OF.


for the following property Cocaine, Marijuana and any other controlled substances, U.S. Currency,

records of drug sales, drug paraphernalia, computers, items described within this affidavit, items

listed in Attachment I.


And if you find the same or any part thereof, to bring it forthwith before me, at my office at

Municipal Court, Montgomery County, Alabama; or if the said warrant is issued for violation of a

state law return the same to any State Court.

Dated this __31__ day of __MARCH__, 2006.


JUDGE, MUNICIPAL COURT
CITY OF MONTGOMERY
MONTGOMERY COUNTY
MONTGOMERY, ALABAMA
Signed @ _11:25A_ Hours

**THE CITY OF MONTGOMERY**

**MONTGOMERY COUNTY**

**S E A R C H   W A R R A N T**

TIME ENTERED :  _1141_

TIME EXITED  :  _____

THIS _31_ DAY OF _mareH_
2006.

_____
SHERIFF OR CHIEF OF POLICE

_____
DEPUTY OR MUNICIPAL OFFICER

**FILED IN OFFICE THIS _____ DAY OF**

_____, 2006.

CLERK



# NARCOTICS & INTELLIGENCE BUREAU
## EVIDENCE/PROPERTY INVENTORY



The following item(s) were seized/received by the Montgomery Police Department subsequent to a: (circle one)
**SEARCH WARRANT, CONSENT SEARCH, or ADMINISTRATIVE INVENTORY**. These items were inventoried
by **Cpl S.T. WRIGHT #977**_____, a member of the Narcotics and Intelligence Bureau.

ADDRESS OBTAINED: __5304 W SHADES VALLEY DR__    DATE: __3/31/06__

TIME OF ENTRY: __1141__    TIME OF EXIT: __1213 HRS.__    PAGE __2__ of __2__
Am

| ITEM# | DESCRIPTION OF ITEM SEIZED OR RECEIVED | LOCATION ITEM FOUND | TIME | OFFICER |
|---|---|---|---|---|
| 1) | 1 large gallon size clear plastic bag containing cocaine | 3rd bedroom bath Room | 1142 | KCB 1079 |
| 2) | a clean plastic Packaging used to Package cocain | 3rd bed Room under bed | 1143 | PDC 466 |
| 3) | clear plastic Packaging used to Package cocain | under couch mat couch | 1144 | PDC 466 |
| 4) | ASSORTED PAPER Documents | 380 Belmont | 1145 Am | PDC 466 |
| 5) | MOTOROLA cell Phone i530 Nextel SN# 354YEQ60MK | 3rd Bedroom Bath Room window | 1159 Hrs | BWIS 846 |
| 6 | Pint size Plastic bag containing cocaine | 3rd bedroom Bottom Dresser drawer | 1200 Hrs. | PDC 466 |
|  | No furthe |  |  |  |

By signing below I certify that I have received a copy of the inventory of item(s) as identified above.

SIGNATURE OF RECEIVER: __J. Jones (owner)__    DATE & TIME: __3/31/06__

I certify that the above inventory accurately reflects the items received or removed from the listed location

SIGNATURE OF EVIDENCE OFFICER: __Cpl S.T. WRIGHT #977__    DATE & TIME: __3/31/06__



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA )
)
)
v. )    CASE NO. 2:05CR68-T
)    [WO]
)
KEITH ELDRIDGE WILLIAMS )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on defendant's ["Williams"] Motion to Suppress

evidence obtained as the result of what Williams contends was an unlawful search and

seizure (Doc. # 20). Having reviewed the parties' submissions and considered testimony at

an evidentiary hearing, the magistrate judge recommends that the motion be granted.

## I.    FACTS AND PROCEDURAL HISTORY

On 5 February 2005, detective Brad Bartlett ["Bartlett"], a narcotics division officer

with the Montgomery Police Department, executed a warrant to search "3157 Montezuma

Drive, Montgomery, Alabama; any persons, outbuildings and vehicles located within the

curtilage thereof or any vehicles belonging to any subjects located at the residence."

(Suppression Hr'g Tr. ["Tr."] 28; Doc. # 37, p. 3) [herein, 3157 Montezuma Drive is referred

to as "the residence"]. Williams was located inside the residence when the warrant was

executed, and the vehicle he had driven there was parked on the street nearby (Tr. 46-47).

A search of Williams's vehicle, which Bartlett testified was conducted pursuant to the

warrant (Tr. 48),[1] led to the discovery of a handgun and $75,000 in U.S. currency (Tr. 47).[2]

According to the government's indictment, Williams had been previously convicted of multiple felonies. Consequently, he was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2005).[3] After reviewing the parties' submissions, the court held an evidentiary hearing on 16 June 2005.

## II.   DISCUSSION

Williams contends that the warrant at issue was not supported by probable cause and was constitutionally imprecise (Doc. # 20). The United States contends that the warrant is valid, and that, regardless, the application of the good faith exception to the exclusionary rule validates the warrant and the search (Doc. # 38, p. 6).

---

[1]The United States does not contend that Williams lacks standing to challenge the validity of the warrant. Moreover, the United States does not suggest or offer evidence that Williams lacked a proprietary or possessory interest in the vehicle searched or the items seized pursuant to the warrant. Finally, Bartlett testified that his intent in crafting the affidavit and warrant was to allow for the search of all vehicles that had been driven to the residence by persons found therein when the warrant was executed (Tr. 42-44). Therefore, the court finds that Williams has standing. *See, e.g.*, *United States v. Delgado*, 903 F.2d 1495, 1501 (11th Cir. 1990) ("A person possesses standing when he has a reasonable expectation of privacy from governmental intrusion in either the premises searched or the items seized.").

[2]Williams was arrested and transported to the police department, where Bartlett informed him of his so called *Miranda* rights (Tr. 33, 65). *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Williams initially invoked his right to remain silent and his right to counsel before reinitiating a conversation with Bartlett that led to an agreement whereby Williams was to arrange for the delivery of 10 kilograms of cocaine (Tr. 66).

[3]Williams was charged with other crimes relating to an incident that occurred in March and involved circumstances that are materially unrelated to his February arrest. The court has addressed Williams's motion regarding the March incident in a separate opinion.

## A.    Probable Cause

During the month prior to obtaining the warrant at issue, Bartlett had been in contact several times with an anonymous source who informed him of her suspicion that illegal activity was occurring at the residence (Tr. 34-35, 54-55).[4] She told him that brief visits were frequently paid by persons driving cars registered in other states, and she reported their license plate numbers (Tr. 34-35). Although she did not report the commission of any crimes, she did report smelling something funny, but she did not know what the smells were or what various drugs smelled like (Tr. 35).

Prior to obtaining the warrant, Bartlett knew very little of his anonymous source. He knew "her name, where she worked, [and] where she lived" (Tr. 54). He knew that she had no local criminal history and had reported being the victim "of a few thefts and things like that" (Tr. 55), but he did not know whether she had previously "provided information to the police about crimes or criminals any time before then" (Tr. 55).

Nevertheless, police followed vehicles she reported seeing at the house, but Bartlett did not testify whether this surveillance led to any additional evidence (Tr. 54).[5] Moreover, based on the information she provided, on 3 February 2005, Bartlett ordered a "trash run" to obtain garbage from the residence (Tr. 30).

Describing the "trash run" procedure, Bartlett testified, "We have our city sanitation

---

[4]The "anonymous source" was never named or otherwise identified prior to the suppression hearing.

[5]The affidavit supporting the warrant, which is set forth in relevant part *infra*, suggests the police were able to identify one of the vehicles as belonging to a "drug violator" (Doc. # 37, p. 5) but offers no indication that any additional surveillance had been conducted.

pick up trash from a residence, and we go through the trash." *Id.* In this case, the operation

was initiated when Bartlett telephoned a "Mr. Dickey," who Bartlett presumes is, or was at

the time, a supervisor with the City sanitation department (Tr. 56). Bartlett did not know

who actually retrieved the trash or even where the trash actually came from (R. 35-39). Nor

did he know how the trash was brought to the police station, conceding unequivocally that

it just "showed up" (Tr. 37-38). A search of the trash that materialized at the police station

revealed marijuana and cocaine residue as well as a food delivery receipt with the address

"3157 Montezuma Drive" (Tr. 60-61).

With these facts, Bartlett prepared an affidavit setting out the following "grounds for

an anytime 'Knock and Announce' search warrant":

1)    Probable cause being that in the month of January 2005,
an anonymous source contacted DET Bartlett and
advised that a B/M resided at 3157 Montezuma Drive.
The source stated the B/M would have vehicles with out
of state tags (Florida, Georgia and Texas) visit him for a
few minutes and leave. The source also stated that
he/she observed a B/M get out of a red sports car (FL
tag) with a duffle bag and enter the residence of 3157
Montezuma Drive, Montgomery, AL. After a few
minutes the [sic] B/M left the residence with the duffle
bag. Once the B/M left the residence, the source
observed several B/M's [sic] show up at the residence
and smelled a foul odor emitting from the residence. The
anonymous source also gave a tag # from a vehicle that
frequents the residence. The vehicle is registered to a
Keith Fitts who is a known drug violator.

2)    Further probable cause being that on February 03, 2005,
through investigative means, *DET Bartlett retrieved*
burnt Marijuana [sic] residue, a bag of white powder
residue tested positive [sic] for the presence of Cocaine

4

Case 2:06-cv-00736-WKW-SRW    Document 15-4    Filed 02/26/2007    Page 5 of 13

> [sic] residue and a food receipt with the name Roderick
> Lewis of 3157 Montezuma Drive *from the residence* of
> 3157 Montezuma Drive, Montgomery, AL.

> The foregoing is based on the personal knowledge of this affiant
> and on the facts obtained by the Montgomery Police Department
> Narcotics and Intelligence Bureau.

(Doc. # 37, p. 5) (emphasis added).

The primary issue before the court is whether the affidavit prepared and sworn to by Bartlett established probable cause for issuing the warrant. The court evaluates the affidavit's numbered statements separately.

## 1.    Information from an Anonymous Source.

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV. As the Eleventh Circuit Court of Appeals has noted:

> The [F]ourth [A]mendment contemplates that, to authorize entry
> upon private property, a detached and neutral magistrate will
> consider the sworn affidavits of law enforcement officials
> supporting a claim that criminal activity is afoot. With a
> detached perspective, the magistrate is then able to render a
> dispassionate decision concerning the presence of probable
> cause. Where probable cause exists, society's interest in
> thwarting criminal activity outweighs the individual's privacy
> interest.

*United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983).

"Probable cause to support a search warrant exists when the totality of the

circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991)). While the totality of the circumstances test is by its nature flexible, when probable cause is based on hearsay (as opposed to direct police observation), the affidavit(s) provided in support of the warrant must at least allow "for a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Illinois v. Gates*, 462 U.S. 213, 234 (1983). Thus, the Court of Appeals has

> upheld the validity of the probable cause affidavit where the confidential informant had provided information that had proven to be truthful and reliable in the past, *id.* [citing *Brundidge*, 170 F.3d at 1353]; where the level of detail showed the informant was unlikely to lie because the lies would be discovered in short order, *id.* at 1353-54; where police were able to independently confirm some of the facts the informant provided, [*United States v.*] *Martin*[, 297 F.3d 1308] at 1315 [(11th Cir. 2002)]; *United States v. Talley*, 108 F.3d 277, 281 (11th Cir. 1997); and where the confidential informant made a statement against his or her penal interest to the officer, *United States v. Farese*, 612 F.2d 1376, 1378 (5th Cir. 1980).

*United States v. Roland*, 133 Fed. Appx. 660, 662, 2005 WL 1274479, at *1 (11th Cir. May 31, 2005).

The warrant before the court in the instant case contains no information about the alleged informant tending to demonstrate her veracity, reliability or basis of knowledge (Doc. # 37, p. 5). Moreover, the information provided by the alleged informant was too

vague and inconsequential to give rise to a probability that a crime was being committed.[6] In fact, the only direct, objective evidentiary support that Bartlett could provide in the affidavit was that one of the vehicles identified by the source was "registered . . . to a known drug violator." *Id.* The source provide no information whatsoever to connect Williams with criminal activity. Without more, the information provided by the source is insufficient to justify an intrusion into Williams's privacy.

### 2.    Information obtained through independent investigation.

Interestingly, the United States does not contend that the information provided by the anonymous source was sufficient to establish probable cause. Instead, the United States contends that this information, when considered with the information obtained as the result of "items seized during the course of [the] 'trash run,'" suffice to establish probable cause (Doc. # 38, p. 6).[7]

The "trash run," however, was conducted by employees, presumably, of the City sanitation department without police supervision, and, for aught that appears, without the

---

[6]To find that the information provided by this informant under these circumstances is sufficient to establish probable cause would essentially sanction searches of virtually every popular residence, at least those inhabited by a "B/M" and frequently visited by other "B/M's," as long as an odor - deemed "funny" by anonymous sources, with anonymous motivations, and anonymous abilities to observe or perceive - emits from the dwelling.

[7]The United States also notes additional "surveillance" (Doc. # 38, p. 6). Aside from the evidence obtained from the "trash run," however, the warrant affidavit neither explicitly nor implicitly refers to any additional surveillance other than what has already been discussed, and the United States offers no explanation or support for its contention. Notwithstanding "additional surveillance", there is no evidence of the information yielded by it.

supervision of anyone.  In fact, as noted *supra*, Bartlett has no personal knowledge of how

the trash was retrieved, whether it was actually retrieved from the residence in question, how

it materialized at the police station, or by whose hands any one of those actions occurred.

This state of affairs is problematic   - to say the least -   for at least two reasons:

1.     With no knowledge of the persons who conducted the "trash run" or how or

       when (or for that matter where)[8] it was conducted, Bartlett is simply unable to

       attest to the trustworthiness of what amounts to deputized phantom informants;

       and

2.     Bartlett's sworn statement that *he* "retrieved" drug residue and a receipt with

       the suspect address on it "from" the suspect address is misleading because, as

       he testified, he did not know from whence this evidence came (Tr. 38).

The law is clear that a material misrepresentation or omission, when recklessly made

or omitted, in an affidavit in support of a warrant compromises the warrant's legitimacy. *See,*

*e.g.*, ***Holmes v. Kucynda***, 321 F.3d 1069, 1083 (11th Cir. 2003).

> "When the Fourth Amendment demands a factual showing
> sufficient to comprise 'probable cause,' the obvious assumption
> is that there will be a *truthful* showing" [***United States v.***
> ***Halsey***, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)] (emphasis
> in original). This does not mean "truthful" in the sense that every
> fact recited in the warrant affidavit is necessarily correct, for
> probable cause may be founded upon hearsay and upon
> information received from informants, as well as upon

---

[8]All of Bartlett's testimony about the "trash run" is hearsay - a fact that is not necessarily fatal. The problem is that he  - and therefore the court -  is unable to identify the unknown affiant, i.e., the person or persons who collected the trash and represented to Bartlett (or someone else) that it was in fact collected at the residence.

> information within the affiant's own knowledge that sometimes
> must be garnered hastily. But surely it is to be "truthful" in the
> sense that the information put forth is believed or appropriately
> accepted by the affiant as true.

*Franks v. Delaware*, 438 U.S. 154, 164-65 (1978) *quoted in part by* **Holmes**, 321 F.3d at

1083.

Bartlett's testimony leads unavoidably to the conclusion that his sworn statement that

he himself had retrieved the evidence from the suspect's residence was at least a reckless,

material falsity concealing the true, troubling circumstances of the so-called "trash run."

Having already determined that the remainder of the warrant is insufficient to establish

probable cause, the court concludes that the warrant is void. ***Dahl v. Holley***, 312 F.3d 1228,

1235 (11th Cir. 2002) (quoting *Franks*, 438 U.S. at 171-72, for the proposition that a warrant

issued as the result of an affidavit containing misleading information may nonetheless be

"valid if, absent the misstatements or omissions, there remains sufficient content to support

a finding of probable cause").

### B.    *Curtilage*

Notwithstanding the invalidity of the warrant, Williams's motion should be granted

for another reason. His vehicle was parked on a public street and was therefore not within

the curtilage of the residence. *See **United States v. Sears***, No. 04-13286, 2005 WL 1427509

(11th Cir. June 20, 2005) (upholding a search of a co-defendant's vehicle pursuant to a

"warrant that allowed [police officers] to search Sears' home and all vehicles located on its

9

curtilage. *Once Jones pulled his van into Sears' driveway,* his vehicle was located on the curtilage." (emphasis added)); *United States v. Hall*, 47 F.3d 1091, 1097 (11th Cir. 1995) ("In general, the curtilage is defined as the area around the home which 'harbors those intimate activities associated with domestic life and the privacies of the home." (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987))); *United States v. Roberts*, 747 F.2d 537, 541-42 (9th Cir. 1984) (finding that a private road linking a few residences to a public road was not within the curtilage of any of the residences); *United States v. Stanley*, 597 F.2d 866, 870 (4th Cir. 1979) (finding that a common parking area without assigned parking spaces was not within the curtilage of any of the mobile home lots); *United States v. Borno*, 946 F. Supp. 972, 977 (M.D. Fla. 1996) (holding that a vehicle was in the curtilage of the residence to be searched and, thus, subject to search when "it was parked off the street and located very close to the front door of the residence"); *Rogers v. State*, 543 So.2d 719, 720 (Ala. Cr. App. 1988) ("It is . . . clear that a search warrant 'would not cover a car parked nearby on a public street, even if it were clear beyond question that the vehicle belonged to the occupant of the described premises.'" (quoting WAYNE R. LAFAVE, 2 SEARCH & SEIZURE § 4.10(c) (2d Ed. 1987))).[9]

Generally, the challenger has the burden of proving a search warrant invalid. *United*

---

[9]The language used in the warrant suggests that police were authorized to search the vehicles belonging to anyone located within the residence when searched regardless of where the vehicle might be located. This court is not compelled to devote judicial resources to dispelling this absurd proposition. After all, Bartlett did not interpret the warrant that way (Tr. 42-43). Instead, he believed that because the residence had no driveway, the curtilage extended to the street. This proposition, which the United States has not adopted, is equally absurd.

*States v. de la Fuente*, 548 F.2d 528, 534 (5th Cir. 1977) (holding that the defendant has the "initial, unshiftable burden of alleging and proving some fact sufficient to make a prima facie showing of illegality" and discussing *Batten v. United States*, 188 F.2d 75 (5th Cir. 1951); *United States v. Smith*, 499 F.2d 251 (7th Cir. 1974). In this case, Williams has met his burden.

### C.    *Exclusionary Rule, the Good Faith Exception and the Fruits of the Tainted Search*

Williams asks the court to exclude the evidence obtained as the result of the search, including the weapon found in his vehicle and any statements he made while in police custody (Doc. # 20). The United States contends that, even if the warrant was invalid, the good faith exception should apply because "officers acted in good faith reliance upon the search warrant" (Doc. # 38, p. 6).

The court has made clear that Bartlett's efforts to secure a warrant were at best reckless and perhaps much worse, thus lacking any sign of good faith, and it is highly unlikely that the judge in this case would have issued a warrant had he known the truth. Therefore, suppressing the evidence in this case will further the purposes of the exclusionary rule, *see, e.g., United States v. Leon*, 468 U.S. 897, 918-25 (1984); *United States v. Robinson*, 336 F.3d 1293, 1295-1296 (11th Cir. 2003), and the good faith exception does not apply. *United States v. McGough*, 412 F.3d 1232, 1239-40 (11th Cir. 2005); *United States v. Martin*, 297 F.3d 1308, 1313 (2002) (discussing the four circumstances in which the

Case 2:06-cv-00736-WKW-SRW    Document 15-4    Filed 02/26/2007    Page 12 of 13

exception does not apply).[10]  "[T]he Government bears the burden of demonstrating the applicability of the *Leon* good faith exception . . . ." *Robinson*, 336 F.3d at 1297.  In this case the United States has failed to meet its burden.

The unreasonable search of Williams's vehicle led to the discovery and seizure of $75,000 in cash and a firearm as well as Williams's arrest, during which Williams made statements to the police.  The money, weapon and statements were the results of the initial Fourth Amendment violation and should not be used as evidence against Williams. *See, e.g.*, *Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963); *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003).

### III.  CONCLUSION

Therefore, it is the RECOMMENDATION of the Magistrate Judge that the motion be GRANTED and that all evidence obtained as the result of the search in question be suppressed.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before 15 September, 2005.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

---

[10]Furthermore, Bartlett's mistaken belief that the curtilage of the residence extended onto the public street cannot support application of the good faith exception. *United States v. Chanthasouxat*, 342 F.3d 1271, 1279-80 (11th Cir. 2003).

appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. ***Nettles v. Wainwright***, 677 F.2d 404 (5th Cir. 1982). *See **Stein v. Reynolds Securities, Inc.***, 667 F.2d 33 (11th Cir. 1982). *See also **Bonner v. City of Prichard***, 661 F.2d 1206 (11th Cir. 1981) *(en banc)* (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on 30 September 1981).

DONE this 9th day of September, 2005.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE