IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| | * |
| v. | *   CIVIL ACTION NO. 2:06cv736-WKW |
| | * |
| SEVENTY-FOUR THOUSAND SEVEN | * |
| HUNDRED DOLLARS ($74,700) | * |
| IN UNITED STATES CURRENCY, | * |

### BRIEF IN SUPPORT OF CLAIMANT'S MOTION TO SUPPRESS

Comes now the Claimant George E. Jones, Jr., by and through counsel, and in support of his Motion to Suppress says as follows:

**Facts**

On March 31, 2006, B.W. Bartlett of the Montgomery Police Department applied for a "document" search warrant for Claimant's residence at 5304 West Shades Valley Drive, Montgomery, Alabama, utilizing an affidavit which is in evidence.  That affidavit went into great detail about the operation of some drug enterprises but was, as officers testified, a "boiler plate" affidavit but for eight (8) allegations of facts specific to Claimant and/or the residence.  Those eight allegations, however, covered a span of approximately eleven years prior to the search.  Those eight allegations contained only two allegations that were less than two years old.  The two allegations were (1) that a confidential informant said that Claimant was involved in trafficking multiple kilograms of cocaine, and, (2) that the informant had seen "a large quantity" of U.S. Currency at Claimant's residence.  Officers testified at suppression hearing that they knew of no other investigation of either Claimant or his residence regarding occupancy of the residence, income sources for Claimant, quantities of cash or ownership of the residence.  The officers, other than Bartlett, established surveillance on the residence to await the issuance of the "document search

warrant" and stopped a vehicle that left the residence without a search warrant and without probable cause to do so. Upon being told by Bartlett that the search warrant was signed pursuant to Alabama law by a judge of the Municipal Court of Montgomery, Alabama, the officers initiated seizure of the premises, chasing Claimant from his property onto other neighboring property, where, they say, he threw down a quantity of cocaine. Meanwhile, other officers had searched a vehicle on the premises, and entered the premises and found the cash that is the subject of this action (counting the case and listing it on the search warrant inventory). It is clear that, at the time of the seizure of the premises and the discovery of the money therein, there was no search warrant available for service and none of the officers can say that the warrant was ever either properly executed or delivered to a resident of the property. Indeed, the officers purportedly acting pursuant to the search warrant could not testify that they ever had the search warrant at Claimant's residence. The officers all testified that they did not actually see the search warrant at the time of execution and did not know what it authorized, but, rather, assumed that it said what all of their search warrants authorize because they always get the same authorization.

After finding drugs in the vehicle on Claimant's premises and discovering the money made subject of this action, the search was stopped and a "drug" search warrant was allegedly obtained. The affidavit for that alleged that narcotics were being stored at Claimant's residence because, upon executing the "document search warrant", they found illegal narcotics. It should be noted that 5403 Shades Valley Drive was called a "residence" in one part of the affidavit and a "business" in another. The affidavit did not specify what kind of narcotics were found. The "drug search warrant" issued at that time was never, as far as witnesses testified, actually taken to the residence and properly executed.

## Issues Presented

1. Whether the "document search warrant" was issued upon an adequate showing of probable cause to conduct the search authorized.

2.    Whether the "document search warrant" was a general search warrant proscribed by the Fourth Amendment to the United States Constitution.

3.    Whether the search of 5304 West Shades Valley Drive, Montgomery, Alabama, was conducted in a lawful manner, even assuming a lawful search warrant.

4.    Whether the search of 5304 West Shades Valley Drive, Montgomery, Alabama, was the product of a search without a search warrant or of a search warrant that was vague and overbroad because, even assuming probable cause for some search, it authorized search of places and/or persons for which there was no probable cause to search and is constitutionally imprecise, and, so clearly failed to adequately describe the things to be seized, as to authorize a general search and seizure.

5.    Whether the second search warrant and search pursuant to same was the product of an unlawful search and seizure arising from the first alleged warrant.

**Discussion**

At the time of obtaining the "document search warrant", Detective Bartlett failed to inform the issuing judge that Bartlett had, in a previous federal case, been found to have given false testimony in an affidavit for a search warrant, and that his credibility was subject to question. Attached to the motion to suppress and incorporated by reference is the Recommendation of the Magistrate Judge from <u>United States v. Keith Eldridge Williams,</u> Case No. 2:05CR68-T, which is a record of this Honorable Court, and Claimant requests the Court to take judicial knowledge of same.  Claimant contends that any magistrate considering a search warrant based upon representations by Bartlett should have been notified of this since it tends to show a pattern and practice of false representations in applications for search warrants.   A material misrepresentation or omission, when recklessly made or omitted, in an affidavit in support of a warrant compromises the warrant's legitimacy. When the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a truthful showing.

<u>Franks v. Delaware</u>, 438 U.S. 154, 164-65 (1978).

The affidavit for the "document search warrant" failed to establish probable cause to believe any specific item SUBJECT TO SEIZURE would be found in the residence at 5304 West Shades Valley Drive, Montgomery, Alabama. The case-specific information in the affidavit included two anonymous calls two and three years prior, the "fact" that Claimant gave his address as 5304 West Shades Valley Drive, Montgomery, Alabama, one year before and ten years before, the "fact" of a ten-year-old drug arrest of Claimant (not conviction), and the "fact" of a statement two years previously by an informant that Claimant was selling drugs. All of that information is and was stale and of no real value. The current information consisted only of two pieces of information that Bartlett claimed to have from an informant. They are that Claimant sold large quantities of cocaine and that Claimant had a "large quantity" of cash at his home. It is notable the police never undertook any effort to corroborate that current information or to determine whether facts existed which might explain a "large quantity" of cash in a lawful manner. They resorted immediately to the remedy of invading and searching Claimant's home.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath affirmation, and particularly describing the place to be searched and the persons or things to be seized." Probable cause must be determined by a neutral and detached magistrate. Fed. R. Crim P. 41(a). In this case, the information that "a large quantity" of money was so vague in and of itself as to make it impossible for a determination of probable cause to search and seize any particular thing, leaving it up the officers to decide what and what not to seize. It should be noted that officers testified that they get "document search warrants" for Montgomery Municipal Court judges and they always authorize the same thing. At the time of the searches and seizures, the police officers did not know what, if any, searches and seizures were authorized by search warrant, beyond what they assumed from the fact that they always get the same warrant, authorizing them to look anywhere because a document can be anywhere, including

personal diaries of persons not specifically named in the search warrants.

The Exclusionary Rule based upon the Fourth Amendment applies to civil forfeiture because they are quasi-criminal in nature. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246 (1965), See U.S. v. Premises and Real Property with Bldgs., Appurtenances and Improvements at 500 Delaware Street, 113 F.3d 310, 312 n.3 (2nd Cir. 1997).

"The effect of the Fourth Amendment is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, there persons, houses, papers, and effects against all unreasonable searches and seizures under the guise of law..... The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, **nothing is left to the discretion of the officer executing the warrant.** (emphasis supplied) U.S. v. Marron, 275 U.S. 192 (1927).

"We need not decide in the present case whether the description of the things to be seized would have been too generalized to pass constitutional muster, had the things been weapons, narcotics or "cases of whiskey"....The point is that it was not any contraband of that kind which was ordered to be seized, but literary material-'books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings, and other written instruments concerning the Communist Party of Texas, and the operations of the Communist Party of Texas." The indiscriminate sweep of that language is constitutionally intolerable. To hold otherwise would be false to the terms of the Fourth Amendment, false to its meaning, and false to its history." Stanford v. Texas, 379 U.S. 476 (1965).

The scope of the "document search warrant" in this case was such as to create a general search warrant. It permitted a search of every part of Claimant's home (and was arbitrarily extended to vehicles on the property with no real connection to the purpose of

the warrant), including looking in match boxes for drug records, reading the diary of Claimant's mother, and anything else the officers decided the wanted to search, read, or seize. Beyond that, the officers said that their technique was not to seize only those things described in the warrant, but to seize every document, take them away, and decide later what was actually useful under the warrant, and is a constitutionally intolerable general warrant. See Groh v. Ramirez, 540 U.S. 551 (2004). See also Andresen v. Maryland, 427 U.S. 463 (1976).

By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement endures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Maryland v. Garrison, 480 U.S. 79, 84 (1987).

The search cannot be saved by a reasonable reliance on a facially valid warrant under U.S. v. Leon, 468 U.S. 897 (1984) because, (1) the affiant intentionally mislead the magistrate about the affiants reliability by failing to inform the magistrate of his prior misstatements in affidavits (within the four corners of the affidavit), (2) the magistrate was not neutral or detached (he always gives the officers the same "document search warrant"), (3) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, (4) the warrant was so facially deficient in particularizing the place to be searched and the things to be seized that the executing officers could not reasonably presume it to be valid, and (5) the executing officers did not know what it said, but merely presumed it was the standard rubber-stamp version. They could not rely on the facial validity of something whose face they had never seen.

The service of the "document search warrant", if it was served at all, was deficient. The officers did not "knock and announce" and did not present a copy of the search warrant to Claimant or anyone else. If anything was provided to anyone at the residence, it was the one-page document labeled "document search warrant", without the referenced

"Attachment I and Attachment II."  As such, it was incomplete.  Both Alabama law (3.11 A.R.Cr.P.) require the delivery of a copy of the search warrant to the person from whom or from whose premises the property was taken. Here, a copy was not delivered, and, if it had been, it would not have been complete, and, as such, should be considered no warrant at all.  Groh v. Ramirez, 540 U.S. 551 (2004).

The second search warrant was clearly the product of the illegal "document search warrant".  A reading of the affidavit recites as probable cause, referring to the execution of the "document search warrant," that "during the execution of the search warrant illegal narcotics were found.  The document search warrant was immediately ceased and the business (sic) was secured pending the court's approval of a drug search warrant."  If the narcotics referred to in the second warrant were those in the truck tool box testified to a the suppression hearing, the affiant should have also informed the court of that fact, plus the information that the truck had just arrived and that nothing from the house had been placed in the tool box prior to its search, there then being no connection between the truck and the house regarding the narcotics.  Wong Sun v. United States, 371 U.S. 471 (1963).

**Conclusion**

The "document search warrant" was based neither upon probable cause nor full disclosure to the magistrate of pertinent facts.  The fact of the search warrant's issuance under those circumstances, and the testimony of officer that they always get the same warrant, plus the general nature of the warrant, prove a "rubber stamp" magistrate.  As a search warrant lacking in particularity and leaving all decisions to the executing officers, the "document search warrant" was a contitutionally intolerable general warrant.  The warrant, if served at all, was improperly served.  As a result of these facts, the "drug search warrant" must also be invalid as fruit of the poisonous tree, and all items seized and sought to be used as evidence by the government should be suppressed.

Respectfully submitted this the 17th day of September, 2007.

s/Bruce Maddox
Bruce Maddox (MAD013)
Attorney for George Jones
6728 Taylor Court
Montgomery, Alabama 36117
Phone: (334) 244-7333
Fax: (334) 260-9600

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of September, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to appropriate parties.

s/Bruce Maddox
Of Counsel